IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW DAY MINISTRIES OF <br> PITTSBURGH IN C/O HELEN ROBERTS, <br> <br> Plaintiff, <br> <br> v. <br> <br> AUTO-OWNERS INSURANCE COMPANY, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 20-627 <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

Presently before the Court is the Motion for Summary Judgment and brief in support filed by Defendant Auto-Owners Insurance Company ("Defendant") in this matter (Docket Nos. 57, 58), the brief in opposition filed by Plaintiff New Day Ministries of Pittsburgh in C/O Helen Roberts ("Plaintiff") (Docket No. 60), and Defendant's reply (Docket No. 62). In addition to the motion and briefs, the Court has considered the parties' concise statements of material facts and responses, and the appendices that were filed in connection with the briefs.

For the reasons set forth herein, Defendant's Motion for Summary Judgment is denied.

**I.     Factual Background**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to Defendant's summary judgment motion. On February 26, 2020, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas of Allegheny County, Pennsylvania. (Docket No. 1-2). Defendant subsequently removed the Complaint to this Court pursuant to the Court's diversity jurisdiction. (Docket No. 1).

1

According to the Complaint, Plaintiff owns a church located in East Pittsburgh, Allegheny County, Pennsylvania (the "Property"). (Docket Nos. 59, ¶ 1; 60-1, ¶ 1). Defendant (which maintains its principal place of business in Lansing, Michigan) is an insurance company that regularly conducts business in Allegheny County, Pennsylvania. (Docket Nos. 59, ¶ 2; 60-1, ¶ 2). Defendant issued an insurance policy (the "Policy") to Plaintiff to cover the Property. (Docket Nos. 59, ¶ 4; 60-1, ¶ 4). In February 2019, Plaintiff submitted a claim to Defendant, indicating that the Property's roof had been damaged by a windstorm that occurred on February 24, 2019. (Docket Nos. 59, ¶ 3; 60-1, ¶ 3). At the time of Plaintiff's alleged loss, the Policy covered the Property, subject to the terms and conditions thereof, for a term effective August 10, 2018, to August 10, 2019. (Docket Nos. 59, ¶ 4; 60-1, ¶ 4).

Defendant denied coverage for Plaintiff's loss ostensibly because the damage to the Property was not caused by the recent windstorm. (Docket No. 1-2, ¶ 15; 3, ¶ 15). According to Plaintiff, in 2016, Defendant denied a prior claim by Plaintiff seeking coverage for loss to the Property, photos of which showed somewhat similar damages. (Docket No. 59, ¶ 10). It appears that, over time, because of these claims, the parties have engaged the services of various experts who have assessed the damage to the Property as well as potential causes of such damage. The point of contention in the present lawsuit is whether or not the losses currently alleged by Plaintiff are covered by the Policy. (Docket Nos. 59, ¶ 5; 60-1, ¶ 5). Plaintiff argues that Defendant breached the Policy by failing and refusing to pay Plaintiff the benefits owed thereunder in connection with the February 2019 windstorm, while Defendant denies that the losses at issue here are covered by the Policy.

Plaintiff's one-count Complaint avers a breach of contract claim under Pennsylvania law. (Docket No. 1-2 at 4-5). Plaintiff seeks damages to cover the alleged loss caused by the windstorm

(estimated at $405,818.66), together with interest, court costs, and damages for delay. (*Id.*). The parties have completed fact and expert discovery. As explained, *supra*, Defendant filed its Motion for Summary Judgment, which has been fully briefed by the parties, and the motion is now ripe for decision.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence

of each element for which it bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position.  *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991).  Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. at 324.

### III.  Discussion

Plaintiff's Complaint contains a single claim brought under Pennsylvania law for breach of contract.  (Docket No. 1-2 at 4-5).  In moving for summary judgment, Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff cannot demonstrate that it sustained a loss covered under the terms of the Policy since there is ample evidence showing that the alleged damage to the roof existed prior to the February 2019 windstorm.  In other words, according to Defendant, the evidence of record indicates that the damage to the Property pre-dates the 2019 claim and was caused by issues such as wear and tear, inadequate flashing, and tiles that were displaced prior to 2019 – all of which would be excluded under the Policy – and that such damage was <u>not</u> caused by the windstorm on February 24, 2019.  Defendant contends that Plaintiff has not offered evidence sufficient to refute the evidence proffered by Defendant, and therefore Plaintiff cannot establish that Defendant is liable for breach of contract.  In response to Defendant's assertions, Plaintiff argues that a clear factual dispute exists here as to the cause and extent of the damage to the Property.  Plaintiff maintains that such factual dispute cannot appropriately be resolved by the Court on summary judgment but must instead be considered by a jury.

In order to prove a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Here, while the parties do not dispute that a valid contract exists or that Plaintiff suffered a loss, the parties disagree as to whether Defendant breached a duty to pay Plaintiff under the Policy. As indicated, *supra*, the parties' core dispute here is whether the loss alleged by Plaintiff is covered by the Policy.

In its memorandum in support of its motion, Defendant argues that the Policy unambiguously precludes Plaintiff from recovering here since Plaintiff cannot demonstrate that it sustained a loss that was covered under the terms of the Policy. (Docket No. 58 at 10). In support of its argument, Defendant cites to the parties' expert reports. Defendant indicates that its first expert report, issued by Scott M. Wasson, P.E. (conducted by Donan Engineering Company, Inc. ("Donan")), based on inspections on May 31, 2019, and June 24, 2019, concluded that the displaced tiles of the Property's roof originated prior to March 23, 2016 (the date of a study by another Donan representative), and that such displacement was not caused by the February 2019 windstorm or other recent weather events. (*Id.* at 11-12 (citing Docket No. 58-4 at 13)). Defendant states that Mr. Wasson further concluded that the alleged damages to the interior of the Property were not caused by wind, that the lack of a continuous water-resistant barrier and inadequate installation of flashing caused long term and ongoing water intrusion to the ceiling of the women's bathroom, and that age-related deterioration of adhesives caused ongoing water intrusion to the north stairway tower ceiling. (*Id.* at 12-13 (citing Docket No. 58-4 at 13)).

Defendant then explains that, in contrast, Plaintiff's expert, J. David Gardner, P.E., issued a report on February 7, 2020, opining that there was an increase in misaligned shingles since 2016,

5

that the Property's interior damage was caused by misaligned shingles, and that Mr. Wasson had failed to prove that the shingles were not damaged by wind. (Docket No. 58 at 13 (citing Docket No. 59-6 at 6)). Defendant notes that Mr. Gardner also issued a supplemental report, dated May 20, 2021, opining that "it is reasonable to conclude that a windstorm event of this magnitude [the February 24, 2019 storm] would cause and/or generate roof damage similar to what occurred to the New Day Ministries Church." (*Id.* at 13-14 (quoting Docket No. 59-8 at 5)). Defendant explains that another expert, Gary W. Ellis, P.E., who it retained to rebut Mr. Gardner's report, concluded in a supplemental report dated July 29, 2021, that Mr. Gardner's report includes contradictory statements and fails to provide a scientific basis for his opinions. (*Id.* (citing Docket No. 59-7 at 4-5)). Defendant also argues that Plaintiff's expert and estimates failed to acknowledge the prior 2016 claim or to differentiate what damages reportedly pre-dated the 2019 alleged loss and what estimated repair costs aim to address such damages. (*Id.* at 14).

In response to Defendant's memorandum, Plaintiff asserts that, since the Policy is an "all-risk" policy and since Plaintiff has shown that it suffered a loss to the Property, Defendant bears the burden of showing that the loss falls within a Policy exclusion, which it has not done. (Docket No. 60 at 3). Plaintiff argues that there are genuine issues of material fact pertaining to the cause of the loss and the existence or non-existence of damage prior to the loss alleged here, which is evidenced by the competing expert reports as well as other evidence of record. (*Id.* at 3-4). Plaintiff contends that resolution of such issues is appropriate for consideration by a jury and is not a proper basis for a summary judgment motion. (*Id.* at 4).

Plaintiff further asserts that Defendant's denial of its claim appears to rely on Plaintiff's 2016 claim, which involved a tile fracture from a projectile impact that "caused the historical water intrusion [at] the ceiling upslope from the third westernmost window in the north wall of the

6

sanctuary," even though Plaintiff had the tile repaired and had no other problems after that repair. (Docket No. 60 at 5 (citing Docket Nos. 60-5 at 10-11; 60-9)). Plaintiff also states that Defendant ignores the fact that Plaintiff is not alleging water leakage from the area relative to the 2016 loss. (*Id.*). Plaintiff testified that the two areas of leakage currently at issue are: (1) the north quarter of the hallway, and (2) over the pulpit in the sanctuary; whereas, the 2016 claim involved damage to the middle of the sanctuary over the pews, and not the area above the pulpit. (*Id.*). Plaintiff also represents that Defendant itself produced evidence suggesting that wind potentially had caused damage to the Property, including a report from a roofing vendor noting wind damage, wind damage to neighboring houses, and lifted and displaced tiles causing a water leak, as well as deposition testimony from Defendant's corporate representative. (*Id.*).

In its short reply brief, Defendant initially argues that Plaintiff is incorrect in characterizing the Policy as an "all-risk" policy. (Docket No. 62 at 2). Nevertheless, Defendant explains that in the context of insurance coverage, when an action involves an "all-risk" policy, once the insured satisfies its burden of showing that a loss occurred (which is shown "[s]o long as reasonable people could conclude that the claimed loss is covered by language anywhere in the policy *or* the amendatory endorsements"), the burden shifts to the insurer to show that the loss falls within a specific policy exclusion. *See Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256-57 (Pa. Super. Ct. 2008). Defendant further notes that if the insurer establishes an exclusion enumerated by the contract terms within an all-risk policy, the burden then shifts back to the insured. *See id.* at 1257.

Whether or not the Policy is viewed as an at-risk policy, however, appears to be irrelevant at this juncture on summary judgment, since Defendant asserts, *arguendo*, that – regardless of whether the Policy is considered to be an all-risk policy – also, "'it is a necessary prerequisite to

7

recovery upon a policy for the insured to show a claim *within the coverage* provided by the policy.'" [1] (Docket No. 62 at 2 (quoting *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966)) (emphasis added by Defendant)).  Accordingly, although Defendant notes that Plaintiff has not shown the necessary prerequisite that its claim is within the coverage provided by the Policy, Defendant argues further that, regardless of whether Plaintiff has shown such prerequisite, Defendant has established applicable exclusions within the Policy, so the burden is back on Plaintiff to establish coverage under the Policy – and Plaintiff has not done so.  (*Id.*).

Thus, in arguing that it has established several applicable exclusions from coverage here, Defendant remarks that the Policy provides that Defendant "will not pay for loss or damage caused by or resulting from" wear and tear, hidden or latent defects that cause the property to damage itself, and faulty, inadequate or defective maintenance of the property.  (Docket No. 62 at 2 (citing Docket No. 1-2 at 87-89)).  Defendant then contends that Plaintiff, in responding to the cited exceptions, "without more, takes the position that there is coverage as a result of a windstorm." (*Id.*).  However, Defendant further argues that, according to the Policy, damage to the interior of the insured's premises as a result of a windstorm will only be covered if the damages "first" resulted from the windstorm, and the damages here did not "first" result from the 2019 windstorm.[2] (*Id.* at 2-3).

---

[1]  Although Defendant contends that the Policy is more properly considered a "named perils" policy, rather than an "at-risk" policy, Defendant argues that, regardless of how the Policy is viewed, it is entitled to summary judgment.  Since Defendant does not pursue the argument that the Policy is a named perils policy, the Court does not pursue such argument either in considering Defendant's motion.

[2]  Although it is not clearly cited, Defendant is presumably referring to the Policy language providing in its "Limitations" section that Defendant will not pay for loss of or damage to property described therein, including "[t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not" unless "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters." (Docket No. 1-2 at 90).

In support of this last contention, Defendant again cites to its expert reports and argues that it has established that various items of damage were not caused by the 2019 windstorm. (Docket No. 62 at 2-3). Defendant further argues that, instead of providing an alternate explanation for each area of water damage within his report (which could thereby generate a genuine issue of material fact), Plaintiff's expert, Mr. Gardner, states that Defendant's expert has failed to prove that the February 2019 windstorm did not cause the displacement and/or misalignment of the slate shingles. (*Id.* at 3). Defendant also argues that Mr. Gardner does not opine <u>when</u> any shingles became displaced, <u>when</u> any interior damage occurred, or that a wind event caused the alleged damage – only that a wind event occurred. (*Id.*). Defendant notes that Mr. Gardner opined that the damage to the Property's interior was similar in nature and scope to what existed before the storm, but he does not opine as to any new areas of damage and instead only opines that the already damaged areas have gotten worse. (*Id.*). Thus, Defendant concludes that Mr. Gardner does not opine that any damage occurred as a result of the February 24, 2019, windstorm, so Plaintiff has not presented any evidence that a windstorm "first" caused the complained of damage. (*Id.* at 4). Therefore, according to Defendant, Plaintiff has not only failed to establish that the claim is within the coverage of the policy, a necessary prerequisite to recovery under any theory, but Plaintiff has also failed to show that, if the Policy is considered to be an "all-risk" policy, the windstorm caused the alleged damage and there is coverage for the alleged loss. (*Id.*).

Upon consideration of the parties' arguments, the Court finds that issues of material fact exist here that render this case inappropriate for resolution on summary judgment. Although the parties do not contest the existence of a valid contract and that Plaintiff has suffered a loss, there are significant disputed issues of material fact involving the cause of the loss alleged as well as the extent of damage to the Property prior to the 2019 windstorm. Defendant argues that the parties'

9

expert reports establish that Plaintiff has failed to show Policy coverage, as well as that Defendant has shown applicable exclusions within the Policy, but the Court does not agree.

Most notably, viewed in a light most favorable to Plaintiff as is required on summary judgment, the Court finds that the characterization of Mr. Gardner's report, as set forth by Defendant, is exceedingly narrow and does not adequately portray the implications of his conclusions. After engaging in significant explanation of what he had considered in his investigation, Mr. Gardner opined that: many of the damaged interior areas of the Property had gotten worse in the seven months since Donan's 2019 report (issued after the February 2019 windstorm); there had been a definite increase in the displacement and/or misalignment of slate shingles on the Property's roof between Donan's 2016 and 2019 investigations; the interior damage to the ceiling and altar areas of the sanctuary had more likely than not been caused by the displacement and/or misalignment of the shingles; Donan had failed to prove that the February 2019 windstorm was not causative of the displacement and/or misalignment of the shingles; and it is reasonable to conclude that a windstorm of the magnitude involved in February 2019 would cause roof damage similar to what occurred here. (Docket Nos. 58-6 at 5-6; 59-8 at 4-5).

Reading Mr.Gardner's report and supplement generously, the Court disagrees with Defendant's statement that Mr. Gardner's report did not opine that <u>any</u> damage occurred as a result of the February 24, 2019, windstorm. Furthermore, the Court does not agree with the suggestion that Mr. Gardner's references to <u>additional</u> Property damage is the same as him opining that <u>no</u> damage, or no new damage, occurred as a result of the February 24, 2019, windstorm. Instead, the Court agrees with Plaintiff's argument that this matter clearly involves a dispute as to the cause and extent of the damages at issue here. Quite simply, there are competing expert reports, as well as additional evidence of record, regarding the cause of the Property's roof damage and the

existence and extent of damages to the Property prior to the windstorm in February 2019. Such disputed issues of fact are proper for consideration by a jury, and not by the Court as the basis for a dispositive motion.

Accordingly, the Court finds that Defendant is not entitled to summary judgment as to Plaintiff's claim of breach of contract.

**IV.   Conclusion**

Based on the foregoing, Defendant's Motion for Summary Judgment is denied.

An Order consistent with this Memorandum Opinion follows.


Dated: June 15, 2023               *s/ W. Scott Hardy*
                                   W. Scott Hardy
                                   United States District Judge

cc/ecf: All counsel of record